UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEIVID GUILLERMO PANTOJA SANCHEZ,<br><br>Petitioner,<br><br>v.<br><br>BRUCE SCOTT et. al,,<br><br>Respondents. | CASE NO. 2:26-cv-02667-JHC<br><br>ORDER |

## I
## INTRODUCTION

This matter comes before the Court on Deivid Guillermo Pantoja Sanchez's Petition for Writ of Habeas Corpus. Dkt. # 1. The Court has reviewed the materials filed in support of and in opposition to the Petition, the rest of the record, and the governing law. Being fully advised, for the reasons below, the Court GRANTS the Petition. Dkt. # 1.

## II
## BACKGROUND

Petitioner is a native and citizen of Venezuela who entered the United States on or about October 3, 2022, and was immediately taken into custody. Dkt. # 7 at 2; Dkt. # 6-1 at 3. On October 8, 2022, Petitioner was paroled out of immigration custody with Alternative to

Detention (ATD) supervision requirements. Dkt. # 6-1 at 3; Dkt. # 6-2 at 2-3. Petitioner was set to report to the New York ATD Unit on December 5, 2022, where he would be processed for a Notice to Appear. Dkt. # 7 at 2; Dkt. # 6-2 at 3. Respondents say that, two days later, the parole automatically terminated due to Petitioner's failure to report. Dkt. # 5 at 1-2; *see also* Dkt. # 7 at 2.

In July 2023, Petitioner filed an application for relief from removal with U.S. Citizenship and Immigration Services (USCIS). Dkt. # 7 at 2; *see* Dkt. # 6-8. Through USCIS, Petitioner was granted work authorization and a Social Security number. Dkt. # 1 at 4. Petitioner's USCIS application remained pending until USCIS transferred his application to immigration court after Petitioner was detained, as described below. Dkt. # 6-8.

On January 5, 2025, during a targeted enforcement operation in New Jersey, Immigration and Customs Enforcement (ICE) took Petitioner into custody. Dkt. # 7 at 2; *see* Dkt. # 6-3. Although Petitioner was served a NTA at this time, it was never filed with the immigration court. Dkt. # 7 at 2; *see* Dkt. # 6-5. Shortly after Petitioner's arrest, an immigration judge (IJ) in New Jersey denied Petitioner's request for bond after finding that the IJ lacked jurisdiction. Dkt. # 7 at 2-3; Dkt. # 6-6 at 2.

On February 3, 2026, Petitioner was transferred to the Northwest ICE Processing Center where he remains detained. Dkt. # 7 at 3. On February 19, 2026, ICE issued another NTA charging Petitioner as removable pursuant to 8 U.S.C. § 1182(a)(6)(A)(i), and then filed it with the immigration court. Dkt. # 7 at 3; *see* Dkt. # 6-7.

On March 16, 2026, Petitioner proceeding pro se submitted a Petitioner for Writ for Habeas Corpus. *See Pantoja Sanchez v. Hernandez, et al*, Case No. 2:26-cv-00884-TMC, 2026 WL 1506130 (W.D. Wash. May 29, 2026) (*Pantoja I*). That Petition was denied on May 29, 2026. *See id*.

On March 11, 2026, Petitioner conceded removability but sought relief from removal. Dkt. # 7 at 3. An immigration judge denied Petitioner's application for relief from removal and ordered him removed to the Dominican Republic or Venezuela, in the alternative. Dkt. # 7 at 3; *see* Dkt. # 6-9. Petitioner appealed the order, and that appeal remains pending. Dkt. # 7 at 3.

## III
## DISCUSSION

Federal district courts have the authority to grant a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241 (a), (c). "The petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). Petitioner says that his re-detention was in violation of Due Process and, separately, that his detention has become impermissibly prolonged. *See* Dkt. # 1.

### A. Abuse of writ doctrine

"The abuse of the writ doctrine generally forbids the reconsideration of claims that were or could have been raised in a prior habeas petition." *Mendoza Araiza v. Hernandez et al.*, 2026 WL 2071149, at *3 (W.D. Wash. July 17, 2026) (quoting *Alaimalo v. United States*, 645 F.3d 1042, 1049 (9th Cir. 2011); *see also Eldridge v. Howard*, 70 F.4th 543, 551 (9th Cir. 2023). "[T]o determine whether a claim is second or successive, [courts] must look to the substance of the claim and decide whether the petitioner had a full and fair opportunity to raise the claim in the prior application." *Eldridge*, 70 F.4th at 552 (citation modified).

Petitioner's re-detention and any alleged due process violation related to that re-detention, necessarily occurred and was ripe before the denial of the first petition, but still in

*Pantoja I* Petitioner did not raise this due process claim.[1] *See Pantoja I*, 2026 WL 1506130 (seeking relief as a member of the *Maldonado Bautista* bond eligible class). And consequently the Court did not consider a claim related to Petitioner's re-detention. *See id.* at *1 ("[t]he crux of this case is whether Petitioner is subject to mandatory detention under § 1225(b)(2) or discretionary detention under § 1226(a)").

Respondents say that this should preclude Petitioner from now raising his re-detention claim. Dkt. # 5 at 7. They say he had a full and fair opportunity to raise the claim because he was able to submit "a sophisticated legal argument," which they say demonstrate that he can "raise relevant legal issues regarding his detention or that he was able to obtain sample petitions to use as examples." *Id*. This does not comport with the record. Petitioner, who was unrepresented, submitted with a filing deficiency, did not name the proper Respondent, failed to file a traverse, and requested that he not be transferred out of the Eastern District of New York, which this Court does not have jurisdiction over. *See* Order to Show Cause, *Pantoja I*, 2026 WL 1506130, (Apr. 13, 2026), Dkt. # 9 (order to show cause instructing Petitioner to file an amended Petition with the proper respondent); *see also Pantoja I*, 2026 WL 1506130, Docket (failing to submit a traverse); *see generally* Petition for Writ of Habeas Corpus, *Pantoja I*, 2026 WL 1506130, (March 16, 2026), Dkt. # 1. Competent counsel presumably would have corrected these errors and spotted the obvious due process concerns related to Petitioner's re-detention. In the *Pantoja I* briefing, even Respondents spotted the issues surrounding re-detention and briefed the issue even though Petitioner did not meaningfully raise it in his original Petition.[2] *See*

---

[1] Petitioner's prolonged detention claim does not raise the same concerns under the abuse of writ doctrine because Petitioner was not detained for a length of time that might invoke constitutional violations when he filed *Pantoja I*; and thus, the basis for relief was not ripe at that time.

[2] Petitioner's original petition very briefly mentions Due Process but does not link this to his re-detention or any specific factual allegations, and in fact, seems to link it more closely with his "right to seek bond." *See* Petition for Writ of Habeas Corpus, *Pantoja I*, 2026 WL 1506130, (March 16, 2026), Dkt. # 1 at 11.

Response to Petition for Writ of Habeas Corpus, *Pantoja I*, 2026 WL 1506130, (March 31, 2026), Dkt. # 6 at 6-8.

The Court finds Petitioner did not have a full and fair opportunity to raise his re-detention claim in his first Petitioner, and thus, the Court will consider the basis for relief now. *See Haidari v. Scott*, 2026 WL 1194634, at *1 (W.D. Wash. May 1, 2026) (finding cause to consider a later habeas petition where in the first action petitioner proceeded pro se and had he had counsel he would have been advised to proceed differently).

B. Re-detention

Petitioner says that his re-detention without the opportunity to be heard violates the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person "of life liberty, or property, without due process of law[.]" The right to due process "applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a governmental action violates due process:

> [G]enerally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

The traditional test for evaluating due process claims established by *Mathews*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).[3]

1. Private Interest

The first *Mathews* factor considers "the private interest that will be affected by the official action[.]" *Mathews*, 424 U.S. at 335. Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

Petitioner has a liberty interest in being free from detention. *See* Dkt. # 1 at 7-8, 10-11; *see also* Dkt. # 5 at 9 (government conceding Petitioner's liberty interest). Even conditional release "is valuable and must be seen as within the protection of the [Due Process Clause]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *see also Bd. of Pardons v. Allen*, 482 U.S. 369,

[3] In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test, but "assume[d] without deciding" that *Mathews* applies in the context of immigration detention. 53 F.4th at 1207. In applying the *Mathews* test, the Court recognized that other circuits have applied the *Mathews* test to due process challenges to immigration proceedings. *Id.* at 1206. The Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings." *Id.* And the Supreme Court has applied *Mathews* in a due process challenge to an immigration exclusion hearing. *Id.*; *see Landon v. Plasencia*, 459 U.S. 21 (1982). More recently, courts in this District have repeatedly applied *Mathews* to evaluate noncitizens' due process challenges to re-detention decisions. *See*, *e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 (W.D. Wash. 2025) (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention and collecting cases that employ this test in the context of immigration detention); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1135 (W.D. Wash. 2025) (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention); *Kumar v. Wamsley*, 2025 WL 2677089, *2-3 (W.D. Wash. Sept. 17, 2025) (same); *Ledesma Gonzalez v. Bostock*, 2025 WL 2841574, *7-8 (W.D. Wash. Oct. 7, 2025) (same); *Tzafir v. Bondi*, 2025 WL 3724708, *2-4 (W.D. Wash. Dec. 24, 2025) (same). The Court likewise applies the *Mathews* test here.

377-81 (1987) (recognizing that governmental action can create a liberty interest protected by the Due Process Clause); *Johnson v. Williford*, 682 F.2d 868, 873 (9th Cir. 1982) (same); *see also Kumar v. Noem*, 2026 WL 668335, at *4 (W.D. Wash. July 28, 2026) ("District courts in the Ninth Circuit have also recognized that a 'petitioner's liberty interest [does] not expire along with his parole.'").

The interest is only strengthened by the government's decision to release Petitioner. *See Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1082 (N.D. Cal. 2025) ("Even when the government has discretion to detain an individual, its subsequent decision to release the individual creates 'an implicit promise' that she will be re-detained only if she violates the conditions of her release.") (citing *Morrissey*, 408 U.S. at 482). Petitioner was free from detention for over three years. Dkt. # 5 at 4-5. This is enough time to "gain[ ] a foothold in the United States" and "develop ties in this country," thereby strengthen his interest in being free from detention. *Pablo Sequen*, 800 F. Supp. 3d at 1009 (first quoting *Kaplan v. Tod*, 267 U.S. 228, 230 (1925); and then quoting *Landon*, 459 U.S. at 32-33) (cleaned up). In fact, Petitioner says in that time, he has married a legal permanent resident, applied for an immigration visa through USCIS, obtained employment authorization, a Social Security number, and maintained lawful employment. Dkt. # 1 at 4.

Respondents say that Petitioner's liberty interest was "significantly diminished" when he did not initially report to DHS in 2022 and instead, he should be treated as having "the same liberty interest as a person who had been stopped at the border." Dkt. # 5 at 9-10. The Government cites *Pantoja I* for this proposition, which as discussed, does not consider Petitioner's due process to his re-detention. *See Pantoja I* (finding Petitioner's "treatment by the government indicates instead that it considered him 'stopped at the border' notwithstanding the fact that he lived in this country for over three years before being re-apprehended").

The Government's treatment of Petitioner might still govern the authority under which he is detained, but it cannot serve to completely strip Petitioner of his liberty interest or right to due process. If Petitioner was stopped at the border, his liberty interest may have been diminished, but Petitioner was not at the border—he had resided in the United States for over three years, was married to a legal permanent resident, and seemingly gained a foothold in society. And although DHS's actions might have indicated at times that it considered Petitioner stopped at the border that was not universal. Petitioner who entered the U.S. in 2022 was not served a NTA charging him as inadmissible until 2026. Dkt. # 7 at 3; *see* Dkt. # 6-7. Since July 2023, he was pursuing relief with USCIS who had issued him work authorization and a Social Security number. Dkt. # 6-8.

Respondents ask this Court to find Petitioner—who has lived openly in the U.S. for over three years—to have a diminished liberty interest based on a legal fiction established by their own treatment of him, but that does not comport with the record for how Petitioner was treated by the Government, how he lived the past three years, or the treatment of similarly situated petitioners in this jurisdiction. *See Espinoza Palacios v. Hermosillo*, 2026 WL 686138, at *7 (W.D. Wash. Mar. 11, 2026). In revoking Petitioner's release, the government has undeniably inflicted a "grievous loss" of Petitioner's liberty, thereby depriving him of a core private interest protected by the Due Process Clause. *See Morrissey*, 408 U.S. 471 at 482. Accordingly, the first *Mathews* factor favors Petitioner

2. Risk of Erroneous Deprivation of Interest Through Procedures Used

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335. "[T]he central issue here is the process by which re-detention occurred, not whether it was warranted." *Pedro*

*Garcia Radillo v. Scott*, 2026 WL 2168044, at * 6 (W.D. Wash. July 28, 2026) (quoting *Gill v. Noem, et al.*, 2026 WL 686134, at *3 (W.D. Wash. Mar. 11, 2026)).

Here, as Petitioner was arrested and immediately re-detained without any notice or opportunity to be heard, the risk of an erroneous deprivation of Petitioner's liberty interest is high. Respondents say that in following 8 C.F.R. § 212.5(e)(1) they could not have violated Petitioner's due process rights.[4] That regulation provides that "[p]arole shall be automatically terminated without written notice (i) upon the departure from the United States of the alien, or, (ii) if not departed, at the expiration of the time for which parole was authorized." The "notice" of parole provided to Petitioner makes no reference to an expiration period, this regulation, or any automatic termination. *See* Dkt. # 6-4. The closest it comes to possibly listing an expiration period is informing Petitioner that he must report within 60 days of release, and informs Petitioner that failure to report may result in arrest and/or possible loss of the right to relief. *Id.*

The Court is skeptical that this automatic revocation without any notice to non-citizens comports with due process. Most courts in this District have rejected the Government's parole expiration argument.[5] The Court does so again, adopting the same reasoning, and finds that

[4] Respondents also say that "[i]n addition to the automatic termination of Petitioner's parole, ICE also issued Petitioner a notice to appear that satisfied the regulations written notice requirement. 8 C.F.R. § 212.5(e)(2)(i)." Respondents do not provide a citation. *See* LCR 10(e)(6) ("In all cases where the court is to review the proceedings of an administrative agency, transcripts, deposition testimony, etc., the parties shall, insofar as possible, cite the page and line of any part of the transcript or record to which their pleadings, motions or other filings refer"). Based on the record, it is unclear what notice Respondents refer to as Petitioner was not provided a NTA until the day he was arrested, and even then, that notice was not properly filed to the immigration Court until a month after his arrest.

[5] *See e.g.*, *Morales v. Hernandez*, 2026 WL 1753643, at *4 (W.D. Wash. June 18, 2026) ("[W]here a noncitizen is allowed to remain at liberty even after parole has expired by its own terms, the noncitizen's liberty interest remains."); *Espinoza Palacios*, 2026 WL 686138, at *8-*9 (quoting *Ramirez Tesara*, 800 F. Supp. 3d at 1136-37 ("That the express terms of the parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide an individualized hearing prior to re-detaining the parolee.")); *Shinwari v. Hermosillo*, 2026 WL 262605, at *4 (W.D. Wash. Jan. 30, 2026) (rejecting Government's argument that petitioners' liberty interest was diminished because they "had notice that their parole was only for a defined, brief period of time and could be revoked at any time.").

under the facts here the regulation cannot serve as the sole basis for re-detention without notice or an opportunity to be heard. *See Espinoza Palacios*, 2026 WL 686138, at *8-*9 (finding that "[t]he risk of erroneous deprivation is further highlighted here, where the Government has provided no documentation related to the revocation of Petitioners' release or their detention").

Even more to the point, Respondents' argument fails because even if Respondents had the authority to re-detain Petitioner, they do not possess authority to do so in a way that violates his due process rights. *See Pedro Garcia Radillo*, 2026 WL 2168044, at * 6. Respondents say Petitioner has no due process rights. Dkt. # 5 at 11 (citing *DHS v. Thuraissigiam*, 591 U.S. 103, 139-40 (2020)). But courts have repeatedly found this argument to fail. *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1170-72 (W.D. Wash. 2023) (discussing *Thuraissigiam* and explaining the distinction between a challenge to admission and a challenge to detention); *Omer G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1106-07 (E.D. Cal. 2025) (same and explaining the "distinction between persons already located inside the United States, like petitioner, and persons attempting to enter the United States, like the petitioners in *Thuraissigiam*"); *see also Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("[T]he government's discretion to [detain] non-citizens is always constrained by the requirements of due process.").

Petitioner says no procedures were used, the record shows the same, and Respondents do not dispute this claim or make any showing to the contrary. Dkt. # 1 at 5; *see generally* Dkt. # 5. The second factor favors Petitioner.

3. Government's Interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. There is a "heightened government interest in the immigration detention context." *Rodriguez Diaz*, 53 F.4th at 1206.

The Court acknowledges that the government likely has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690.

Petitioner has no criminal history, strong family ties to the United States, and he is actively pursuing his relief from removal. *See generally* Dkt. ## 1, 6, 7. This *Mathews* factor also favors Petitioner. *E.A. T.-B.*, 795 F. Supp. 3d at 1324 ("the Government's interest in re-detaining non-citizens previously released without a hearing is low: although it would have required the expenditure of finite resources (money and time) to provide Petitioner notice and hearing on [release conditions] violations before arresting and re-detaining him, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue").

* * *

In sum, all three *Mathews* factors favor Petitioner. The government's re-detention of Petitioner with insufficient notice and no opportunity to be heard violates the due process protections afforded to him by the Constitution.[6] As a result, Petitioner has proven by a preponderance of the evidence that he "is in custody in violation of the Constitution or laws or treaties of the United States" and thus is entitled to habeas relief. 28 U.S.C. § 2241(c).

As to the remedy, the Court finds that release is the appropriate remedy. Where, as here, a petitioner was re-detained without notice or a pre-deprivation hearing in violation of due process, the detention is "unlawful from its inception and typically requires immediate release." *K.G.M.Q. v. Bondi*, 2026 WL 962609, at *12 (W.D. Wash. Apr. 9, 2026); *Kirykovich v. Hernandez*, 2026 WL 890459, at *4 (W.D. Wash. Apr. 1, 2026) ("Because the constitutional violation is the absence of pre-deprivation process, the proper remedy is to restore the status quo

[6] Because the Court finds a violation of Petitioner's Due Process rights, the Court need not consider Petitioner's prolonged detention claim.

ante— that is, to return [the petitioner] to the conditions that existed before his unlawful detention.") (emphasis in original). As other courts in this District and Circuit have found, a post-detention bond hearing would be an inadequate procedural safeguard because it would occur only after detention and thus fails to address an erroneous deprivation of liberty. *E.A. T.-B.*, 795 F. Supp. 3d at 1324 (quoting *Domingo v. Kaiser*, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025)) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). Ordering a hearing while the petitioner remains detained "would not adequately vindicate his rights; it would reward the government for detaining first and asking questions later." *Kirykovich*, 2026 WL 890459, at *4. Accordingly, the Court concludes that the appropriate remedy in this case is immediate release.

## IV
## CONCLUSION

For these reasons, the Court GRANTS the habeas petition (Dkt. # 1) and ORDERS that Petitioner be released from custody within 24 hours of this Order, subject to reasonable conditions of release. The Court further ORDERS that Petitioner shall not be re-detained until after a hearing before a neutral decisionmaker and adequate notice.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

//

//

Dated this 4th day of September, 2026.

John H. Chun

John H. Chun
United States District Judge